**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 19-cv-00233-CMA-STV

SAMMIE LEE DENSON, JR.,

      Plaintiff,

v.

MAJOR RIOS,
LT. VANLIN, and
LT. ROSS,

      Defendants.

---

**ORDER ADOPTING THE SEPTEMBER 27, 2019 RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK**

---

This matter is before the Court upon the September 27, 2019, Recommendation

by United States Magistrate Judge Scott T. Varholak that various claims be dismissed.

(Doc. # 49.) Plaintiff timely objected to the portions of the Recommendation that

recommended dismissal of certain claims. (Doc. # 51.) Defendants timely objected to

the portion of the Recommendation that recommended denial of dismissal of Plaintiff's

Fourth Amendment claim as to Defendants Rios and Ross.[1] (Doc. # 52.) For the

---

[1] As indicated by Defendants in their Motion to Dismiss, Plaintiff refers to Defendant Lucille
Reaux as "Major Rios" and Defendant Dorean Vantlin as "Lt. Vanlin." (Doc. # 20 at 1.)
Consistent with the Parties' briefing and for the purposes of this Order, the Court refers to these
individuals as "Defendant Rios" and "Defendant Vanlin," respectively.

reasons described herein, Plaintiff and Defendants' Objections are overruled. The Court

affirms and adopts the Recommendation.

## I. **BACKGROUND**

### A. **PROCEDURAL HISTORY**

Magistrate Judge Varholak extensively explained the factual background of this

case in his Recommendation of United States Magistrate Judge. (Doc. # 49 at 2–4.)

Magistrate Judge Varholak's Recommendation is incorporated herein by reference. *See*

28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The Court therefore recounts only the

facts necessary to address the Parties' Objections to Magistrate Judge Varholak's

Recommendation.

Plaintiff filed the instant lawsuit against all Defendants in their individual and

official capacities on January 28, 2019, pursuant to 42 U.S.C. § 1983. (Doc. # 1.) He

filed his Amended Complaint on February 27, 2019. (Doc. # 7.) On March 4, 2019, the

Court referred Plaintiff's case to Magistrate Judge Varholak to conduct All Motion

proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and

(b). (Doc. # 9.)

As Magistrate Judge Varholak summarized, Plaintiff asserts four causes of action

in his Amended Complaint:

> Although framed as alleging two claims, construing the Amended Complaint
> liberally, Plaintiff appears to assert four causes of action. In claim one,
> Plaintiff alleges that Defendants violated his Fourth Amendment rights by
> conducting unreasonable strip searches. In claim two, Plaintiff contends
> that the strip searches constituted cruel and unusual punishment in violation
> of the Eighth Amendment. In claim three, Plaintiff asserts that the strip
> searches violated his Fourteenth Amendment Equal Protection rights
> because no other recreation worker was subjected to the strip searches.

Finally, in claim four, Plaintiff contends that he was retaliated against in violation of the First Amendment for telling Defendant Rios "I am the only motherfucker working in the gym," and for filing grievances.

Plaintiff is suing all Defendants in both their individual and official capacities. Plaintiff seeks injunctive relief requesting that he be employed as an OCA III [Offender Care Aid III] and that the code words be removed from his ICC files, compensatory damages in the form of backpay for the duration of time he was removed from his OCA III position, and nominal and punitive damages.

(Doc. # 49 at 4.)

Defendants filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 3, 2019. (Doc. # 20.) Defendants argue that Plaintiff's claims against Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment, that all of Plaintiff's claims are barred by qualified immunity, and that Plaintiff has failed to state any plausible claims for relief under the First, Fourth, Eighth, or Fourteenth Amendments. (Doc. # 20.) Plaintiff responded in opposition to Defendants' Motion to Dismiss on May 16, 2019 (Doc. # 32). Defendants filed a reply (Doc. # 35).

## B.     THE MAGISTRATE JUDGE'S RECOMMENDATION

Magistrate Judge Varholak issued his Recommendation on Defendants' Motion to Dismiss on September 27, 2019. (Doc. # 49.) Magistrate Judge Varholak first applied the Eleventh Amendment to Plaintiff's official capacity claims against Defendants, concluded that the Eleventh Amendment barred all such claims, and recommended that all official capacity claims be dismissed without prejudice. (*Id.* at 7–8.) Next, Magistrate Judge Varholak analyzed Plaintiff's individual capacity claims against Defendants under the Fourth, Eighth, Fourteenth, and First Amendments and recommended that all but

Plaintiff's Fourth Amendment claims against Defendants Rios and Ross be dismissed. (*Id.* at 9–23.) Under his Recommendation, a Fourth Amendment claim against Defendants Rios and Ross in their individual capacities would remain. (*Id.* at 23.) Plaintiff and Defendants timely objected to the Recommendation on October 11, 2019, and October 15, 2019, respectively. (Doc. ## 51, 52.) Defendants responded to Plaintiff's Objection on October 16, 2019. (Doc. # 53.) Plaintiff responded to Defendant's Objection on October 24, 2019. (Doc. # 57.)

## II. <u>STANDARDS OF REVIEW</u>

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir.1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review

of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

**B.** *PRO SE* **PLAINTIFF**

Plaintiff proceeds *pro se.* The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does *pro se* status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**C.** **FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Rule 12(b)(1) provides for challenges to a court's subject matter jurisdiction. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*,

23 F.3d 1576, 1580 (10th Cir. 1994). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context means that the plaintiff pled factual content which allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.     ANALYSIS

**A.     OFFICIAL CAPACITY CLAIMS**

Defendants, to the extent they are sued in their official capacity, may assert Eleventh Amendment immunity as an 'arm' of the state in that they assume the identity of the Colorado Department of Corrections ("CDOC"). *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *see also Brackeen v. Brown*, No. 11-cv-01677-RBJ-KMT, 2013 WL 328937, at *4 (D. Colo. Jan. 8, 2013) ("Plaintiff's claims for monetary relief against the CDOC Defendants in their official capacities constitute claims against the Colorado Department of Corrections.") (citation omitted).

There are two primary exceptions to the sovereign immunity doctrine: (1) where Congress abrogates a state's sovereign immunity through statute; and (2) where the state waives its sovereign immunity and consents to being sued. *Ruiz*, 299 F.3d at 1181. Section 1983 "does not abrogate state sovereign immunity . . . ." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011). "Neither states nor state officers sued in their official capacity [for monetary damages] are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)).

Magistrate Judge Varholak analyzed whether Plaintiff's official capacity claims fall under either category of exception to the sovereign immunity doctrine. (*Id*. at 7–8.) Magistrate Judge Varholak concluded that Congress did not abrogate the state of

Colorado's Eleventh Amendment immunity in Section 1983[2] and Colorado has not waived its sovereign immunity and consented to this lawsuit, so neither exception to the sovereign immunity doctrine applies in the instant case. Magistrate Judge Varholak thus concluded that Plaintiff's official capacity claims for damages are barred by the Eleventh Amendment and recommended dismissal of those claims without prejudice. (Doc. # 49 at 7–8.)

No objection to this portion of the Recommendation has been filed.[3] After reviewing the Recommendation of Magistrate Judge Varholak, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law as to Plaintiff's official capacity claims. *See* Fed. R. Civ. P. 72(a); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## B.    INDIVIDUAL CAPACITY CLAIMS: QUALIFIED IMMUNITY

"[Q]ualified immunity . . . is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Iqbal*, 556 U.S. at 672 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Public officials are entitled to qualified immunity "in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Big Cats of Serenity Springs, Inc. v.*

---

[2] *See Wood*, 414 F. App'x at 105.

[3] Plaintiff has objected to Magistrate Judge Varholak's recommendation to dismiss Plaintiff's First, Eighth, and Fourteenth Amendment claims. The Court interprets those objections to apply to Magistrate Judge Varholak's analysis of Plaintiff's First, Eighth, and Fourteenth Amendment claims against Defendants in their individual capacity, as Magistrate Judge Varholak analyzed these claims after recommending dismissal of Plaintiff's official capacity claims.

*Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013)).

Once an official has raised qualified immunity as a defense, the plaintiff must show that: "(1) the public official violated the plaintiff's constitutional rights; and (2) these rights were clearly established at the time of the alleged violation." *Id.* (citation omitted). Courts may consider each factor in the "sequence [the court] deems best in light of the circumstances of the particular case." *Mink v. Knox*, 613 F.3d 995, 1000 n.4 (10th Cir. 2010). "If the Plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation. *Brown v. Montoya,* 662 F.3d 1152, 1163 (10th Cir. 2011). Common to all § 1983 claims is the requirement that liability be predicated on a violation traceable to a defendant-official's own individual actions. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)) (quoting *Iqbal*, 556 U.S. at 676). To establish a violation of § 1983 by a supervisor, as with everyone else, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights. *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir.2010). "To state a claim against a supervisor-defendant under this circuit's traditional standard, a plaintiff must allege facts suggesting that the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise' resulted in the constitutional violation."

*Martinez v. Milyard*, 440 F. App'x 637, 638 (10th Cir. 2011) (citing *Gallagher v. Shelton*,

587 F.3d 1063, 1069 (10th Cir. 2009).

The Court applies these legal standards to Plaintiff's First, Fourth, Eighth, and

Fourteenth Amendment claims, in turn.

1.   <u>First Amendment</u>

To succeed on a First Amendment retaliation claim against a government official,

a plaintiff must allege:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2)
> that the defendant's actions caused the plaintiff to suffer an injury that
> would chill a person of ordinary firmness from continuing to engage in that
> activity; and (3) that the defendant's adverse action was substantially
> motivated as a response to the plaintiff's exercise of constitutionally
> protected conduct

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff asserts two instances of retaliation under the First Amendment, as laid

out by Magistrate Judge Varholak:

> (1) the strip searches were in retaliation for Plaintiff's statement to Major
> Rios that Plaintiff was "the only motherfucker working in the gym"; and (2)
> Plaintiff was transferred to a different prison, "blackballed" from obtaining
> meaningful employment within the CDOC, and received negative remarks
> in his ICC file, in retaliation for filing grievances against Defendants.

(Doc. # 49 at 18) (citing Doc # 7 at 9–11.)

Plaintiff objects to Magistrate Judge Varholak's recommendation to dismiss his

First Amendment claims. (Doc. # 51 at 2.)

*a.    Plaintiff's first retaliation claim*

"The Tenth Circuit has determined that inmates do not have a First Amendment right to make violent, explicit, or harassing statements, or backtalk to prison officials."[4] *See Turner v. Falk*, 632 F. App'x 457, 460 (10th Cir. 2015) (citing *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("backtalk by prison inmates to guards, like other speech that violates, prison discipline, is not constitutionally protected")). In the instant case, Defendant Rios made a comment to Plaintiff about "tiny dust balls and a rusty sink." *See* (Doc. # 7 at 5). Plaintiff, believing this to be harassment, responded: "I'm the only motherfucker working in the gym." *See* (Doc. # 7 at 9). Plaintiff's comment—backtalk to a prison official—is not constitutionally protected activity. Plaintiff's first retaliation claim thus fails the first prong of the *Shero* test.

In his Objection, Plaintiff argues that he had a First Amendment right to use the word "motherfucker" in conversation with Defendant Rios. Plaintiff argues that he did not use the word in a confrontational, violent, harassing, or disrespectful way and that it is commonly used in CDOC prisons. (Doc. # 51 at 2.) Plaintiff cites to one case—*Bell v. Wolfish*, 441 U.S. 520, 525 (1979)—to support the argument that he had a First Amendment right to use the word "motherfucking" in this context. While it is true that the Supreme Court in *Bell* acknowledged that it has "held that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *id.* at 544, the Court also stated:

> [S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. Lawful

---

[4] (Doc. # 49 at 19.)

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. [] The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. [] There must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. [] . . . . Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Id.* at 545–547 (citations omitted).

The Tenth Circuit's determination that prisoners do not have a First Amendment right to backtalk prison officials is the kind of constitutional restriction on the First Amendment's protections contemplated by *Bell*. Plaintiff takes issue not with Magistrate Judge Varholak application of the law in this Circuit to the facts of this case but with the fairness of the law itself.[5]

The Court agrees with Magistrate Judge Varholak's conclusions that Plaintiff's comment was backtalk to a prison official, that Plaintiff thus was not engaged in constitutionally protected activity when he made the comment, and that Plaintiff fails to establish a necessary element of a First Amendment retaliation claim as a result.

### b. Plaintiff's second retaliation claim

Magistrate Judge Varholak concluded that Plaintiff satisfies the first prong of the *Shero* test because he was engaged in constitutionally protected activity when he filed

---

[5] *See, e.g.,* (Doc. # 57 at 7) ("The Defendant[]s argued the case Crosby v. Fox[, 715 F. App'x at 871]; Turner v. Falk [632 F. App'x at 460], 'Where backtalk is not protected by the First Amendment.' Meaning inmates are to be submissive to C.O. in prisons."); (Doc. # 51 at 6) ("[If] targeted words can be used by v[i]ndictive C.O.s and high ranking officer[]s such as the Defendant[]s, to [j]ustify retaliations to harm inmates, because "a word" could be sass (back talk), this is a travesty of the United States Constitution.").

grievances against Defendants. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 ("It is well-settled that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.")

However, Plaintiff fails the test's second prong: "the defendant's actions **caused** the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" *Shero*, 510 F.3d at 1203 (emphasis added). Plaintiff alleged that he filed various grievances against Defendants Rios and Ross for violating his constitutional rights and, as a result of filing those grievances, he **was** transferred to a different prison with worse quality of life and **has been** blocked from meaningful and better paid employment. *See* (Doc. # 7 at 10–11) (emphasis added). Yet, Plaintiff has not alleged any facts establishing that the Defendants in this case **caused** those "adverse actions" to take place. For example, Plaintiff alleges that "the C.D.O.C. Inmate Classification Committee[] (I.C.C.) will not consider hiring the Plaintiff to a meaningful job or a better quality of living, even though he is qualified" (Doc. # 7 at 10), but he does not allege that these Defendants caused that denial. (*Id.* at 15) (emphasis added). The closest Plaintiff gets to alleging that Defendants caused those adverse actions is conclusory.[6]

Plaintiff, in his Objection, stated: "The Plaintiff had a[] First Amendment right to file the grievances he had and not be retaliated against by changing the Plaintiff['s]

---

[6] *See, e.g.,* (Doc. # 7 at 10) ("Now today because of exercising his First Amendment right[]s, the Plaintiff ha[s] been blackballed or [sic] and ostracized from meaningful employ[]ment inside C.D.O.C. prison[]s, in support of the retaliation by the three Defendant[]s . . . ."); (*id.* at 11) ("There is no legit reason why C.T.C.F. should deny the Plaintiff an O.C.A.III job and a better quality of living, except to support the Adverse Action[]s by the Defendant[]s.").

custody level; placing the Plaintiff in segregation for 14 days without any penological reason; moving the Plaintiff to a[] less desir[]able prison; the writ[]ing of code words in Plaintiff's classification files that prevent favorable employment as an O.C.A.III and Correctional Industries; and othe[r] Adverse Actions." (Doc. # 51 at 2.) Tellingly, Plaintiff again fails to identify how any of these Defendants caused the adverse actions listed and uses the passive voice to describe the adverse actions taken against him. The Tenth Circuit explained in *Pahls v. Thomas* why such allegations are deficient:

> Because § 1983 and Bivens are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights. Rather, it is incumbent upon a plaintiff to "identify specific actions taken by particular defendants" in order to make out a viable § 1983 or Bivens claim.

718 F.3d 1210, 1225–26 (10th Cir. 2013) (citations omitted).

As Plaintiff has not alleged any facts that establish causation, Plaintiff fails the second prong of the *Shero* test—"the defendant's actions **caused** the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" (emphasis added). Even if Plaintiff has pleaded injury, he has not pleaded facts that would allow the Court to conclude these Defendants caused that injury. Plaintiff's First Amendment claim fails for this reason.[7]

---

[7] Plaintiff's failure to allege facts that establish causation is, independent of the *Shero* test, also a failure to allege that Defendants personally participated in the alleged constitutional violation. As personal participation is required to overcome a qualified immunity defense to individual

The Court accordingly overrules Plaintiff's objections to and affirms and adopts Magistrate Judge Varholak's conclusion that Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claims and thus the claims should be dismissed without prejudice. (Doc. # 49 at 22.) *See, e.g., Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is appropriate only "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

2.  <u>Fourth Amendment</u>

"[A] strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir.1993); "[T]he greater the intrusion, the greater must be the reason for conducting a search." *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (citing *Blackburn v. Snow,* 771 F.2d 556, 565 (1st Cir.1985)). Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Farmer v. Perrill*, 288 F.3d 1254, 1259–60 (10th Cir. 2002) (quoting *Bell v.*

---

liability under §1983, Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim for this reason as well. *See, e.g., Brown,* 662 F.3d at 1163 ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."); *Pahls*, 718 F.3d at 1225 ("[C]ommon to all § 1983 ... claims is the requirement that liability be predicated on a violation traceable to a defendant-official's 'own individual actions.'") (quoting *Iqbal*, 556 U.S. at 676); *Porro*, 624 F.3d at 1327–28 ("[t]o establish a violation of § 1983 by a supervisor, as with everyone else, . . . the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.").

*Wolfish*, 441 U.S. 520, 559, (1979)). A strip search must be reasonably related to a legitimate penological interest. *See id.* at 1259–60.

A prisoner's limited constitutional right to bodily privacy and to be free of unreasonable searches and seizures must be weighed against the requirements of prison administration. *Turner v. Safley*, 482 U.S. 78, 84–85 (1987). The Court affords deference to the expertise of correctional officials, who "must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328, 132 S. Ct. 1510, 1517, 182 L. Ed. 2d 566 (2012) (citing *Bell*, 441 U.S. at 546). However, "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir.1982).

Defendants object to Magistrate Judge Varholak's recommendation to deny the Motion to Dismiss Plaintiff's Fourth Amendment claims as to Defendants Rios and Ross.[8] *See generally* (Doc. # 52).

Defendants in their Motion to Dismiss contend that Plaintiff "fails to sufficiently allege that the searches violated his Fourth Amendment rights because he does not

---

[8] The Court notes that none of the parties have objected to Magistrate Judge Varholak's Recommendation to the extent that it concludes that Plaintiff's Fourth Amendment claim against Defendant Vanlin should be dismissed. (Doc. # 49 at 12.) After reviewing the Recommendation with respect to those findings, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court affirms and adopts the Recommendation's findings and conclusions regarding Plaintiff's Fourth Amendment claim against Defendant Vanlin. The Court also notes that Plaintiff included "Fourth Amendment Right" in his Objection, but he did not actually object to Magistrate Judge Varholak's Recommendation as to his Fourth Amendment claims. (Doc. # 51 at 5.)

allege they were conducted in an unreasonable manner" or "that there was no legitimate penological interest for the search."[9] (Doc. # 20 at 7–8.) The Court disagrees.

While "[s]imply invoking conclusory terms like 'harassing' or 'retaliation' is not enough" to allege a plausible Fourth Amendment claim (Doc. # 52 at 8),[10] the Court finds that Defendant has made several allegations that allow the Court to infer the searches were conducted in an unreasonable manner and without legitimate penological purpose:

- Plaintiff was strip searched three times a day. (Doc. # 7 at 8.)
- "The Plaintiff was ordered to take off all his clothing, bend over, spread his anus and allow various C.O.s (names unknown from different days) to look into his cavity." (*Id.* at 7.)
- "On date May 21, 2018 John Doe #2 (name unknown) told the Plaintiff he received a[] phone call from Lt[.] Ross, whom was the recreation C.O. John Doe #2 supervisor, and Lt[.] Ross ordered him to strip search the Plaintiff whenever he leaves from work at recreation, and to leave a note letting other C.O.s know this is Lt. Ross['s] order" "for other C.O.s to follow." (*Id.* at 7, 4.)
- "This order was given by Major Rios to Lt. Ross, and Lt. Ross ordered C.O. John Doe #2 and other C.O.s to retaliate." (*Id.* at 9.)
- The strip searches were "excessive, cruel, embarrassing, demeaning" and "caused psychological pain, stress, and depression. The Plaintiff now suffer[s] migraine headaches[] and anxiety." (*Id.* at 8.)
- Plaintiff's case manager "advised the Plaintiff if he filed a[] grievance he would be further retaliated [against] by Major Rios and Lt[.] Ross. This case manager . . . advised the Plaintiff to file an [i]nformal [g]rievance, not a grievance." (*Id.* at 7.)

---

[9] Defendants contradict their own representation that Plaintiff fails to allege there was no legitimate penological interest for the searches in their Objection. *See* (Doc. # 52 at 2) ("[I]n plaintiff Sammie Denson's Amended Complaint, . . . he alleges that he was strip searched on several occasions upon returning from his workplace at the prison gym without a legitimate penological interest justifying those strip searches.")

[10] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . .") (citations omitted).

- Plaintiff, by way of an informal grievance, "informed Major Frayre of the strip searches ordered by Lt. Ross and Major Rios . . . to harass him." (*Id.* at 7.)
- "Major Frayre gave the informal grievance to Major Two Bear. Major Two Bear came to recreation to discuss the strip searches with the Plaintiff, then Major Two Bear told the Plaintiff he will talk to Lt. Ross. That day the strip searches stopped . . . ." (*Id.* at 7.)

Defendants further argue in their Motion to Dismiss that Plaintiff fails to plead sufficient facts to show that Defendant Rios personally participated in the searches. The Court disagrees. "To state a claim against a supervisor-defendant under this circuit's traditional standard, a plaintiff must allege facts suggesting that the supervisor's personal participation, his exercise of control or direction, or his failure to supervise resulted in the constitutional violation." *Martinez*, 440 F. App'x at 638 (internal citation and quotation marks omitted). In the instant case, Plaintiff has alleged that Defendant Rios ordered the strip searches for no legitimate penological purpose. (Doc. # 7 at 8.) As Magistrate Judge Varholak wrote in his Recommendation:

> "[T]he Complaint alleges that the search was ordered by Defendant Rios, in retaliation for Plaintiff's comments, and not for the legitimate purpose of detecting contraband. Once Plaintiff complained about the strip searches, they stopped—an allegation that could support an inference that the strip searches were not related to a legitimate penological interest but were instead imposed in retaliation for Plaintiff's comments. While Plaintiff's allegations may ultimately prove to be untrue, the Court must accept them as true at the motion to dismiss stage. *Casanova*, 595 F.3d at 1124. Thus, the Court finds that Plaintiff has plausibly pled a Fourth Amendment violation.

(Doc. # 49 at 11.) Accepting Plaintiff's allegations as true at the motion to dismiss stage, Plaintiff has plausibly pled that Defendant Rios violated a constitutional right.

Turning to the second qualified immunity prong, it is clearly established law in this Circuit that a legitimate penological purpose is required to strip search a prisoner. *See Farmer,* 288 F.3d at 1259–60.

Defendants argue that Plaintiff has failed to plead that the strip searches in question were conducted without legitimate penological purpose. Defendants cite to two distinguishable cases, *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988), to support their argument. Both cases are distinguishable on the same grounds—they, unlike the instant case, concern the reasonableness of **prison-wide** strip search **policies**. The Court in *Bell* held that strip searches conducted under a Bureau of Prison-wide policy that required all prisoners to expose their body cavities for visual inspection after every contact visit with a person from outside the institution were not unreasonable under the circumstances and thus did not violate the Fourth Amendment. *See* 441 U.S. at 558. Similarly, *Michenfelder v. Sumner* upheld a prison's policy that required every prisoner in the maximum-security unit for the state's 40 most dangerous prisoners to be strip searched every time he left or returned to his cell. *See* 860 F.2d at 332–33.

In the instant case, Plaintiff has not challenged a prison-wide policy; instead, he has alleged that he alone was singled out for multiple visual body cavity searches because of a prison guard's individualized, retaliatory motive. Plaintiff has plausibly alleged that the strip searches were not related to a legitimate penological purpose. *See Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) ("Since the complaint alleges that Mr. Levoy was subjected to a body cavity search without any justification whatsoever, it

is possible that Mr. Levoy can make a rational argument on the law and facts to support his Fourth Amendment claim"). As the law in this Circuit requires that strip searches of prisoners are related to a legitimate penological purpose, the constitutional violation as alleged by Plaintiff was clearly established at the time it occurred. Accordingly, Plaintiff has satisfied the second prong of qualified immunity analysis on his Fourth Amendment claims against Defendants Rios and Ross.

For these reasons, the Court overrules Defendants' objections to Magistrate Judge Varholak's conclusion that Defendants are not entitled to qualified immunity on Plaintiff's Fourth Amendment claims as to Defendants Rios and Ross. The Court affirms and adopts Magistrate Judge Varholak's analysis and conclusion.

      3.   <u>Eighth Amendment</u>

The Eighth Amendment forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976). The Eighth Amendment may be implicated not only by physical injury, but also by the infliction of psychological harm. *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001).

To constitute an Eighth Amendment violation, a strip search must be conducted in an abusive fashion or with unnecessary force. *Jackson v. Cent. New Mexico Corr. Facility*, 976 F.2d 740, 1992 WL 236921, at *4 (10th Cir. Sept. 21, 1992) (unpublished Table decision); *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986).

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical

and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain[] that is forbidden by the Eighth Amendment." *Joseph v. U.S. Fed. Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000) (quoting *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997)) (citation omitted); *see Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998) (recognizing inmates' sexual harassment allegations may be sufficiently serious to state a claim under the Eighth Amendment). To state an Eighth Amendment claim for sexual harassment, a plaintiff must allege, "as an objective matter, that the alleged abuse or harassment caused pain and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *See id.* (quoting *Freitas*, 109 F.3d at 1338) (citation omitted).

Plaintiff objects to Magistrate Judge Varholak's recommendation to dismiss his Eighth Amendment claims. (Doc. # 51 at 3.) Plaintiff argues that the strip searches constituted cruel and unusual punishment in violation of the Eighth Amendment on two theories—first, that the strip searches had no legitimate penological purpose and gratuitously inflicted suffering, and second, that the strip searches constituted sexual harassment.

The Court agrees with Magistrate Judge Varholak's conclusion that Plaintiff's allegations do not overcome Defendants' qualified immunity defense to Plaintiff's Eighth Amendment claims under either theory. To overcome Defendants' qualified immunity defense at this stage, Plaintiff must demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the

challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

> ### a.    Plaintiff's first theory of liability under the Eighth Amendment

As to Plaintiff's first theory, to constitute an Eighth Amendment violation, the law of this Circuit requires a strip search to be conducted in an abusive fashion or with unnecessary force. *Jackson*, 976 F.2d 740 at *4; *Levoy*, 788 F.2d at 1439. For purposes of a motion to dismiss, Plaintiff's allegations appear to be sufficient to support the conclusion that the strip searches were abusive. Plaintiff alleges that he was strip searched three times a day on multiple days for purely retaliatory reasons and without legitimate penological purpose. Plaintiff also alleges that the strip searches caused him psychological pain, stress, and depression and that he now experiences migraines and anxiety as a result.[11] (Doc. # 7 at 8.) Black's Law Dictionary defines "abuse" as "[a] misuse of anything" or "[c]ruelty that causes harm to another." Applying either definition in the instant case, Plaintiff has sufficiently alleged the strip searches were abusive. It is readily apparent to this Court that the conduct as alleged—conducting three strip searches a day without legitimate penological purpose and purely out of retaliation—is a misuse of authority. The Court thus finds that, for purposes of a motion to dismiss, Plaintiff has satisfied the first prong of the qualified immunity test by alleging sufficient

---

[11] *Compare* (Doc. # 7 at 7–8) ("The Plaintiff was ordered to take off all of his clothing, bend over, spread his anus and allow various C.O.s . .. to look into his cavity. . . . These strip searches ordered by Lt. Ross were excessive, cruel, embarrassing, demeaning and unusual punishment . . . .") *with Benefield*, 241 F.3d at 1272 ("[W]e are in accord with Justice Blackmun's views in *Hudson v. McMillian*, 503 U.S. at 16–17, 112 S. Ct. 995 (Blackmun, J., concurring in the judgment), that the Eighth Amendment may be implicated not only by physical injury, but also by the infliction of psychological harm.").

facts to show that the strip searches were abusive —i.e. that the official violated a constitutional right.

The Court disagrees with Magistrate Judge Varholak's finding that Plaintiff did not allege that the strip searches were conducted in an abusive manner. (Doc. # 49 at 14.) The cases Magistrate Judge Varholak and the parties rely upon for this point are distinguishable in that they concern two questions that are inapplicable in the instant case: first, whether a **single** search constitutes an Eighth Amendment violation,[12] and second, whether multiple searches allegedly conducted pursuant to prison policy and without improper purpose constitute an Eighth Amendment violation.[13] Plaintiff's claims are distinguishable because Plaintiff is not challenging a prison-wide policy and he alleges that he was subjected to repetitive strip searches in a short time frame without legitimate penological purpose.

Nonetheless, Plaintiff fails the second prong of the qualified immunity analysis because he fails to demonstrate that Defendants violated clearly established law. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) ("Plaintiff bears the burden of articulating clearly established law."). To satisfy the clearly established law requirement, generally, "[t]he plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts

---

[12] *See, e.g., Jackson*, 976 F.2d 740 at *1 (one visual strip search); *Levoy*, 788 F.2d at 1438 (one body cavity search).

[13] *See Smith v. Corr. Corp. of Am. Torrance Cty.*, No. CV 16-01201 MCA/GJF, 2018 WL 550592, at *3 (D.N.M. Jan. 23, 2018) (visual inspection policy applied to all prisoners in segregation unit); *see also Bell*, 441 U.S. at 558 (visual inspection policy applied to all prisoners).

must have found the law to be as the plaintiff maintains." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir.) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)) (internal quotation marks omitted). Plaintiff has not cited and the Court has not found any case that could lead the Court to conclude that the strip searches, as alleged, were abusive as a matter of clearly established law.[14]

In some exceptional cases, courts have found the law was clearly established despite the novel factual circumstances presented. In such a case, a general constitutional principle applies "with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful,'" *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). In these "rare 'obvious case[s]'," "the unlawfulness of the officer's conduct is sufficiently clear even though precedent does not address similar circumstances," *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-590, (2018), and "the illegality of the conduct [is] undebatable." *Lowe v. Raemisch*, 864 F.3d 1205, 1211 (10th Cir. 2017).

Plaintiff's allegations do not meet the high bar of obvious illegality this exception demands. Plaintiffs who have benefited from this general principle alleged more outrageous conduct and deliberate indifference to their health or safety than Plaintiff alleges in this case. *See, e.g. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (prisoner was

---

[14] The most analogous case the Court found is *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987). In *Kent*, the Sixth Circuit reversed the dismissal of an Eighth Amendment claim where the plaintiff alleged that female prison guards unrestrictedly and for extended periods of time viewed his naked body in the shower to "retaliate against, punish, and harass him . . . .". 821 F.2d at 1227–28. Although there are some similarities between *Kent* and the instant case, in which Plaintiff alleges that prison officials required him to expose his naked body to retaliate against and humiliate him, this single case out of the Sixth Circuit does not amount to a "clearly established weight of authority from other courts" under *Woodard*, 912 F.3d at 1289.

handcuffed shirtless to a hitching post in the sun for seven hours, without bathroom breaks, with minimal water, and was taunted by prison official about his thirst); *Colbruno v. Kessler*, 928 F.3d 1155, 1160 (10th Cir. 2019) (pretrial detainee was walked naked through public areas of a hospital); *Blackmon v. Sutton*, 734 F.3d 1237 (10th Cir. 2013) (juvenile pretrial detainee was shackled to restraint chair for long stretches with no indication that he posed a threat to himself or someone else and prison guard sat on pretrial detainee without legitimate purpose). Additionally, the Tenth Circuit has cautioned courts not to apply this exception "when there are any relevant ambiguities, such as whether physical force is justified for a particular purpose or in a particular context . . .". *Colbruno*, 928 F.3d at 1165. The Court finds that, in the instant case, there is a relevant ambiguity regarding whether the strip searches were in fact conducted for a legitimate penological purpose.

For these reasons, the Court agrees with Magistrate Judge Varholak's conclusion that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim. (Doc. # 49 at 16.)

        b.     *Plaintiff's second theory of liability under the Eighth Amendment*

As to Plaintiff's second theory, the Court agrees with Magistrate Judge Varholak's conclusion that Plaintiff has not pleaded sufficient facts to state a plausible Eighth Amendment claim.[15] Plaintiff's allegations of sexual harassment are merely

---

[15] The Court is not persuaded by the Recommendation's suggestion that Plaintiff's sexual harassment theory contradicts his retaliation theory. *See* (Doc. # 49 at 15) ("Indeed, this assertion appears to contradict Plaintiff's earlier claim that the strip searches were conducted in retaliation for Plaintiff's comments to Defendant Rios). These theories can be read in harmony: a prison official sexually harassed a prisoner to retaliate against that prisoner. However, this

conclusory. *See, e.g.*, (Doc. # 7 at 8) ("Upon information and belief, Major Rios contacted Lt. Ross to order or conspired to have the Plaintiff strip searched three times a day to humiliate him[] and sexually harass him. There was no other penal justification[]."); (Doc. # 32 at 4) ("Major Rios also ordered[] and conspired with Lt. Ross to have the Plaintiff sexually harassed in the disguise of unjustified strip searches."); (*id.* at 9) ("Lt. Ross is still liable because she gave the order to sexually harass the Plaintiff in a disguise of strip searches.")

Further, the Plaintiff fails to support the applicability of this theory of liability with case law. In his Response to Defendants' Motion to Dismiss and in his Objection, Plaintiff quotes the Eastern District of Pennsylvania in *Wolfe v. Beard* to support his Eighth Amendment theory of sexual harassment:

> [S]everal courts of appeals have determined that sexual touching, physical harassment, and unwarranted intrusions on a prisoner's bodily integrity can rise to the level of an Eighth Amendment violation. *See, e.g., Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir.2012); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir.2012); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997) . . . .

No. CIV.A. 10-2566, 2013 WL 2370572, at *11 (E.D. Pa. May 31, 2013). Yet these cases are inapposite; each case cited by Plaintiff involved a guard touching a detainee. *See, e.g., Wolfe v. Beard*, No. CIV.A. 10-2566, 2013 WL 2370572, at *11 (E.D. Pa. May 31, 2013) (finding that a guard's touching of the area around a detainee's breasts during a pat-down was "nothing more than a routine inmate search" and holding that it did not violate the Eighth Amendment); *Wood v. Beauclair*, 692 F.3d 1041, 1049 (9th Cir. 2012)

_____

does not affect the Court's conclusion that Plaintiff has failed to plead facts to support his sexual harassment theory.

(holding that allegations of a prison guard reaching her hand into the plaintiff's gym shorts and stroking his penis were sufficient to state an Eighth Amendment claim); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (holding that "an unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). Unlike the plaintiffs in those cases, Mr. Denson has not alleged that he was touched during the strip searches at issue.

Plaintiff's sole other citation, *Hudson v. Palmer*, 468 U.S. 517 (1984), involved a completely distinct factual scenario. *Hudson* concerned a prison guard's destruction of a prisoner's possessions, and its holding concerns the Fourth and Fourteenth Amendments. *See* 468 U.S. at 536. The court in *Hudson* suggested that the Eighth Amendment may provide prisoners "a remedy for calculated harassment unrelated to prison needs" but discussed the Eighth Amendment in dicta only. *See id.* at 530. Plaintiff thus has not cited a single case that could lead the court to conclude that Defendants violated a clearly established right, as the qualified immunity defense requires. *See Quinn*, 780 F.3d at 1004.

For the foregoing reasons, the Court overrules Plaintiff's objections to and affirms and adopts Magistrate Judge Varholak's conclusion that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims and thus the claims should be dismissed without prejudice. *See, e.g., Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

4.    <u>Fourteenth Amendment</u>

Plaintiff objects to Magistrate Judge Varholak's recommendation to dismiss his Fourteenth Amendment claims. (Doc. # 51 at 4.)

Plaintiff asserts that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by strip searching him, and no other recreation worker, after every work shift. Plaintiff does not allege that he is part of a suspect class. Instead, he argues a 'class of one' theory. The Tenth Circuit laid out the test for 'class of one' equal protection cases in *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011):

> To prevail on this theory, a plaintiff must first establish that others, "similarly situated in every material respect" were treated differently. *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1210 (10th Cir.2006). A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was "irrational and abusive," *id.* at 1211, and "wholly unrelated to any legitimate state activity," *Mimics, Inc.,* 394 F.3d at 849 (quotation omitted). This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations. *Jicarilla Apache Nation,* 440 F.3d at 1211.

As Magistrate Judge Varholak noted, Plaintiff alleges that no other recreation worker was subjected to strip searches after every work shift but:

> fails to allege any facts that would allow the Court to conclude that the other recreation workers were similarly situated to him "in every material respect." *Kan. Penn Gaming, LLC*, 656 F.3d at 1216. Indeed, Plaintiff alleges that he was found with contraband in his possession, a fact that would appear to distinguish him from other recreation workers who were not found with contraband. Because Plaintiff has failed to allege facts that would permit the Court to conclude that he has was similarly situated in all material respects to the other recreation workers, he fails to meet the first requirement of a Fourteenth Amendment Equal Protection claim.

(Doc. # 49 at 17.) The Court agrees with Magistrate Judge Varholak's findings and conclusions. Plaintiff does not allege facts that would permit the Court to conclude he

was similarly situated in all material respects to the other recreation workers.[16] As a result, he fails to satisfy the first prong of the Tenth Circuit's test in *Kansas Penn Gaming* and, thus, fails to establish a claim for relief under the Fourteenth Amendment.

Accordingly, the Court overrules Plaintiff's objections to and affirms and adopts Magistrate Judge Varholak's conclusion that Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claims. (Doc. # 49 at 18.) *See, e.g., Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Magistrate Judge Varholak's Recommendation (Doc. # 49) is AFFIRMED and ADOPTED as an Order of this Court. Accordingly, it is

FURTHER ORDERED that the Motion is GRANTED with respect to Plaintiff's:

- Eighth, Fourteenth, and First Amendment claims against all Defendants in their individual capacities;

- Fourth Amendment claim against Defendant Vanlin in his individual capacity;

- claims against all Defendants in their official capacities; and

---

[16] The Court observes that Plaintiff alleges for the first time in his Objection that "no other inmate housed at D.R.D.C. [Denver Reception and Diagnostic Center] as an O.C.A.III, or recreation worker was strip searched because unauthorized items were found in their cell." (Doc. # 51 at 4.) The timing of this allegation, which was raised after Plaintiff's Amended Complaint, is improper. *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss. In evaluating the sufficiency of the plaintiffs' allegations, I have evaluated only the allegations in the Complaint."). However, even if the Court considers this allegation despite its improper timing, it is a conclusory, bare assertion and thus does not impact the Court's analysis. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 679–81 (2007).

- request for injunctive relief,

and that all such claims are DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that the Motion is DENIED as to Plaintiff's Fourth

Amendment claims against Defendants Rios and Ross in their individual capacities.

DATED: December 23, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge